IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DANIEL LANAHAN,<br>    Plaintiff | \* |
| | \*    CIVIL ACTION NO. JFM-15-2030 |
| V. | \* |
| STATE OF MARYLAND, et al.,<br>    Defendants | \* |

\*\*\*\*\*\*

MEMORANDUM

Pending is a motion to dismiss, or in the alternative, motion for summary judgment filed on behalf of defendants State of Maryland, Clifton T. Perkins Hospital Center, Sadiq Al-Samarrai, M.D., Khalid El-Sayed, M.D., and David Helsel, M.D.[1] ECF 29. Plaintiff Daniel Lanahan has responded. ECF 34.[2] Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion filed by defendants will be granted.

Background

Plaintiff was convicted of first degree assault in 2006. ECF 29-4, p. 2. In 2011, while serving his sentence for the 2006 assault, plaintiff was charged with second degree assault for allegedly assaulting a correctional employee. ECF 29-5; 29-6. On June 22, 2012, plaintiff was sent to the Clifton T. Perkins Hospital Center ("Perkins"), a State psychiatric hospital, for an evaluation as to his competency to stand trial. ECF 29-7. Plaintiff was found incompetent to stand trial and dangerous to his self or to the person or property of another and committed to the

---

[1] The Clerk shall amend the docket to reflect the proper spelling of defendants' names.

[2] Plaintiff has filed numerous letters and exhibits with the court which have also been reviewed. ECF 23-26, 30, 32-33, 35-41, 43-47.

1

custody of the Department of Health and Mental Hygiene by the District Court of Maryland for Howard County. ECF 29-8.

On September 5, 2014, the District Court of Maryland for Howard County found plaintiff incompetent to stand trial, without substantial likelihood that his competency would be resolved in the foreseeable future, and found him dangerous to the life or safety of self or others. ECF 29-9. As such, he was civilly committed to the Department of Health and Mental Hygiene for inpatient care and treatment. *Id.* The assault charge was dismissed. ECF 29-5.

Plaintiff was admitted to Perkins on September 25, 2012. ECF 29-2, ¶ 5, ECF 29-3, ¶ 5. Dr. Al-Sammarrai was plaintiff's treating psychiatrist from December 17, 2012 until August 6, 2013. ECF 29-3, ¶ 6. Dr. El-Sayed was plaintiff's treating psychiatrist from August 6, 2013 to September 3, 2015. ECF 29-2, ¶ 6.

Plaintiff claims that he has received improper medication to treat his psychological conditions.[3] ECF 1. Plaintiff suffers from Schizoaffective Disorder, Bipolar Type. He presents the following symptoms; paranoia, delusional thinking, grandiose, bizarre and persecutory delusions, behavioral disorganization, and assaultive conduct. ECF 29-2, ¶ 8, ECF 29-3, ¶ 8. Plaintiff's delusions include claims that he is the subject of a vast government conspiracy involving the CIA and NSA which he believes are experimenting on him. *Id.* He also suffers from the delusion that he was a covert operative trained by the Department of Defense to uncover government conspiracies. He claims that while he was incarcerated at the Patuxent Institution he was implanted with a device and staff experimented on him by pumping gas into his cell. *Id.* Plaintiff claims that it is necessary that he advise that there is a conspiracy against the President of the United States. He has made calls to the White House threatening to kill the President. *Id.*, ¶ 9.

---

[3] Plaintiff's complaint and supplements thereto were dismissed in all respects, save plaintiff's claim that he was not prescribed the proper medication to treat his psychiatric condition. ECF 15.

He has also sent letters to courthouses and government agencies containing biological samples in an effort to expose his claims of conspiracy by the government. *Id.*

After his admission to Perkins, plaintiff refused to take prescribed psychiatric medications. ECF 29-2, ¶ 10, ECF 29-3 ¶ 10, ECF 29-11, ECF 29-14. Those medications, Risperidone, Risperidone Concentrate, Divalproex sodium, Valproic acid, Valproic Acid Concentrate, Olanzapine, Olanzapine Zydis, Quetiapine, Loxapine, Diphenhydramine, Diphenhydramine Concentrate, and Benztropine, are used to treat Schizoaffective Disorder, Bipolar Type. *Id.*

A clinical review panel ("CRP") approved the involuntary administration of medications including Risperidone or Olanzapine (for treatment of psychotic symptoms and agitation), Divalproex sodium or Valproic acid (for treatment of mood lability and agitation), and Diphenhydramine (for treatment of side effects from antipsychotic medication) to treat plaintiff's diagnosed Schizoaffective Disorder. ECF 29-10. The Office of Administrative Hearing ("OAH") upheld the CRP's decision. ECF 29-11. However, on July 8, 2013, the Circuit Court for Howard County remanded the case to obtain either a transcript of the OAH hearing or to conduct a new hearing. ECF 29-12.

A new CRP was held on August 20, 2013. ECF 29-13. The CRP approved the forced medication of plaintiff with Olanzapine or Olanzapine Zydis, Quetiapine (for treatment of psychotic symptoms and agitation), Valproic Acid, Divalproex sodium, or Valproic Acid Concentrate (for treatment of mood lability and agitation), and Benztropine, Diphenhydramine, or Diphenhydramine Concentrate (for treatment of side effects from antipsychotic medication), to treat plaintiff's diagnosed Schizoaffective Disorder, Bipolar type. *Id.* The OAH upheld the CRP decision. ECF 29-14. On October 7, 2013, the Circuit Court for Howard County denied plaintiff's petition for judicial review of the OAH decision. ECF 29-15.

Another CRP was convened on November 18, 2013. ECF 29-16. At that time the CRP approved, over plaintiff's objection, administration of Risperidone or Risperidone Concentrate, Olanzapine or Olanzapine Zydis, Quetiapine, Loxapine (for treatment of psychotic symptoms and agitation), Valproic Acid, Divalproex Sodium, or Valproic Acid Concentrate (for treatment of mood lability, agitation), and Benztropine, Diphenhydramine or Diphenhydramine Concentrate (for treatment of side effects from antipsychotic medications) to treat plaintiff's Schizoaffective Disorder-Bipolar type. *Id.*

Plaintiff received medication under a CRP authorization until February of 2014, when he stabilized. ECF 29-2, ¶¶ 11 & 12; ECF 29-3, ¶¶ 11 & 12. The CRP was allowed to expire as plaintiff agreed to voluntarily take the prescribed medications. *Id.*.

Plaintiff exhibited evidence of psychiatric decline intermittently, which his treating psychiatrists suspect are due to his "cheeking" or spitting out his medications. ECF 29-2, ¶ 12; ECF 29-3, ¶ 12. Since the expiration of the CRP authorization in February 2014, plaintiff continues to display symptoms of his mental illness including paranoia, grandiose, bizarre and persecution delusions, disorganized thinking, labile mood, and threatening behavior. ECF 29-2, ¶ 13, ECF 29-3, ¶13. Plaintiff remains psychotic, grossly delusional and obsessive. ECF 29-2, ¶ 14, ECF 29-3, ¶14. In 2015 he reported to his treatment team that he was "seeing a lot of combat." *Id.* He continues in his belief that the Secret Service is interested in him because they want to investigate the experimentation performed on him and employ him as an informant, not because he made threats against the federal government and President. *Id.*

Dr. Helsel received a letter from plaintiff in July of 2015, containing delusional content. Plaintiff reported that the CIA had placed a chip in his head to listen to his conversations and he

4

wanted to speak with the Secret Service to advise them on how to build a bomb that no one has ever been able to make before. ECF 29-17, ECF 29-2, ¶16, ECF 29-3, ¶ 16.

Plaintiff's treatment team anticipates a high likelihood that plaintiff will not adhere to his medication regime when he is discharged form Perkins. They predict a high risk for future violence outside the structured and secured setting of Perkins. ECF 29-2, ¶17, ECF 29-3, ¶ 17. Plaintiff has remained on maximum security wards from the date of his admission to the filing of defendants' dispositive motion. ECF 29-2, ¶18, ECF 29-3, ¶ 18.

Plaintiff's treating psychiatrists indicate that he has no insight into his mental illness. He denies he his mentally ill, and has no understanding why he is being asked to take psychiatric medication. ECF 29-2, ¶19, ECF 29-3, ¶ 19. El-Sayed and Al-Samarrai note that while plaintiff has responded fairly well to the antipsychotic medication Loxapine he has demanded to be taken off that medication for no articulable reason. ECF 29-2, ¶20, ECF 29-3, ¶ 20. Plaintiff has repeatedly expressed no interest in continuing to take psychotropic medication; however, he seeks Adderall for Attention Deficit Disorder ("ADD") or Attention Deficit Hyperactivity Disorder ("ADHC"), disorders with which plaintiff is not diagnosed. ECF 29-2, ¶¶21 & 22, ECF 29-3, ¶¶ 21 & 22.

Standard of Review

A.    Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

561-62 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Venkatraman v. REI Sys., Inc.,* 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id.* 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

B.     Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court

must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Analysis

A. Sovereign Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89,

100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus plaintiff's complaint against the State of Maryland, and the Clifton T. Perkins Hospital Center, a unit of the State Behavioral Health Administration-State Department of Health and Mental Hygiene, a State agency, is barred by the Eleventh Amendment.

    B.    Medical Claim

Involuntarily committed patients at state psychiatric facilities are afforded liberty interests under the Due Process Clause of the Fourteenth Amendment. Therefore, the court must analyze plaintiff's complaint within the scope of Fourteenth Amendment protections afforded involuntary patients at state psychiatric facilities, in order to provide such individuals with such services as are necessary to ensure their "reasonable safety" from themselves and others. *Youngberg v. Romeo*, 457 U.S. 307 (1982). Indeed, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U. S. at 321- 22 (claim that hospital officials knew patient was being injured but failed to intervene; improperly restrained patient for prolonged periods; and were not providing appropriate treatment or training for his mental retardation); *see also Patten v. Nichols*, 274 F. 3d 829, 837 (4th Cir. 2001) (applying *Youngberg* standard to involuntarily committed psychiatric patients).

Under the *Youngberg* standard, the state must provide plaintiff with "adequate food, shelter, clothing, and medical care." *Id.* at 315. According to the Fourth Circuit, there is "no constitutionally significant difference between the nature of the protection-from-harm claims . . . and the denial-of-medical-care [claims]." *Patten,* 274 F.3d at 838.

In determining whether a substantive right protected by the Due Process Clause has been

violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." *Youngberg*, 457 U.S. at 319 (quoting *Poe v. Ullman*, 367 U.S. 497, 542 (1961)). The court applies the "professional judgment" standard, in which "the Constitution only requires that the Court make certain that professional judgment in fact was exercised." *Youngberg*, 457 U.S. at 321. Decisions made by professionals are presumptively valid and "liability may be imposed only when the decision by the professional is such a *substantial departure* from . . . professional judgment, practice, or standard as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323 (emphasis added).[4]

As an involuntarily committed patient in a State psychiatric facility, plaintiff has a "'significant constitutionally protected liberty interest in avoiding the unwarranted administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003), quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990). "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009). "Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions." *Youngberg*, 457 U.S. at 324. The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. *See DeShaney v. Winnebago*, 489 U.S. 189, 200 (1989); *Youngberg*, 457 U.S. at 324.

There is ample evidence that plaintiff's involuntary medication was necessitated by his

---

[4] In applying this standard, the Fourth Circuit has held that that a defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional." *Patten*, 274 F.3d at 843.

behavior. Against the backdrop of plaintiff's behavior, his liberty interest in remaining free of unwanted medication was properly overridden. *See Harper*, 494 U.S. at 225. Moreover, plaintiff received the procedural protections required before a protected liberty interest may be infringed. Plaintiff was provided notice, the right to be present at an adversarial hearing, and the right to present and cross-examine witnesses each time an order for his involuntary medication was issued. ECF 29-10, 29-11, 29-13, 29-14, 29-16, The process for review of the decisions to involuntarily medicate plaintiff comports with procedural due process. *See Harper*, 494 U.S. at 235.

Plaintiff's claim that he does not suffer from a psychiatric illness, but rather requires medication to treat ADD or ADHD, is belied by the record and appears to be the fruit of his delusional thinking. Nothing in plaintiff's treatment constitutes a substantial departure from professional judgment or impermissibly impacted plaintiff's health. Defendants exercised professional judgment in deciding to forcibly medicate plaintiff and in the selection of the medication appropriate to treat him. Based on the record evidence, defendants Sadiq Al-Samarrai, M.D., Khalid El-Sayed, M.D., and David Helsel, M.D. are entitled to summary judgment.

Conclusion

For the reasons stated, the dispositive motion filed by defendants is granted. A separate Order shall be entered in accordance with this Memorandum.

Date: June 23, 2016

J. Frederick Motz
United States District Judge